UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CECILIA ARGUETA, an individual,

Plaintiff,

v.

J.P. MORGAN CHASE, dba WASHINGTON MUTUAL F.S.B., QUALITY LOAN SERVICE CORPORATION, FEDERAL HOME LOAN MORTGAGE CORPORATION, and DOES 1-20,

Defendants.
_____________________________/

NO. CIV. 2:11-441 WBS GGH

MEMORANDUM AND ORDER RE: MOTION TO DISMISS

----oo0oo----

Plaintiff Cecilia Argueta brought this action against defendants J.P. Morgan Chase ("Chase") d/b/a Washington Mutual F.S.B. ("Washington Mutual" or "WAMU"), Quality Loan Service Corporation ("Quality Loan"), and Federal Home Loan Mortgage Corporation ("FHLMC" or "Freddie Mac"), arising from defendants' allegedly wrongful conduct related to a loan. Chase and FHLMC have filed a joint motion to dismiss the Complaint in its

entirety for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 4.)

I. Factual and Procedural Background

In January of 2007, plaintiff refinanced an existing loan and signed a promissory note with Washington Mutual for a $320,000.00 loan, which was secured by a deed of trust for plaintiff's primary residence. (Notice of Removal Ex. A ("Compl.") ¶¶ 1, 11 (Docket No. 1); Req. for Judicial Notice in Supp. of Defs.' Mot. to Dismiss ("Defs.' Req. for Judicial Notice") Ex. A (Deed of Trust) (Docket No. 4-2).) The Complaint alleges that "[t]he terms of the finance transaction with WAMU are neither clear nor conspicuous, nor are they consistent; for example the pre-calculation of payments based on interest rates to be determined in the future, . . . ." (Id. ¶ 12.) The loan was allegedly "underwritten without proper due diligence by WAMU as evidenced by their failure to verify borrower's income utilizing IRS Income Tax Disclosure Form 4506T which would have provided past borrower tax returns." (Id.)

Washington Mutual allegedly knew or should have known that plaintiff did not qualify for and could not afford the loan. (Id. ¶ 13.) Plaintiff alleges that had Washington Mutual "used a more accurate and appropriate qualifying procedure, such as the use of tax forms or a higher level of scrutiny of determining the debt to income ratio," plaintiff would not have qualified for the loan. (Id.)

"Defendants, each of them, neither explained the workings of the entire mortgage loan transaction, how the rate,

finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants." (Id. ¶ 15.) The Complaint alleges that the purpose of the transaction was for plaintiff "to benefit from a better interest rate and consolidate consumer debt," but the purpose was "knowingly and intentionally thwarted and indeed made impossible by Defendants' actions." (Id. ¶ 22.)

On September 25, 2008, the Federal Deposit Insurance Corporation ("FDIC"), acting as receiver for Washington Mutual following its closure, and Chase signed a purchase and assumption agreement ("P & A agreement") allocating Washington Mutual's assets and liabilities. (Defs.' Req. for Judicial Notice Ex. E.) The Complaint alleges that FHLMC "is the purported current beneficiary under assignment of the Trust Deed." (Id. ¶ 2.) Chase "is acting as the current servicer." (Id.) Quality Loan "is or was acting as agent to the trustee." (Id.)

A Notice of Default and Election to Sell Under Deed of Trust was recorded on April 24, 2009, in the Recorder's Office of San Joaquin County. (Defs.' Req. For Judicial Notice Ex. B.) A Substitution of Trustee listing Chase as the beneficiary and Quality Loan as the substitute trustee was recorded on June 5, 2009. (Id. Ex. C.)

On August 26, 2010, Quality Loan served plaintiff with a Notice of Trustee Sale, reflecting a September 16, 2010, sale date. (Compl. ¶ 28; see Defs.' Req. for Judicial Notice Ex. D (Notice of Trustee Sale).) The Complaint details a series of interactions between plaintiff and Chase from September to December of 2010 in which plaintiff requested a loan

modification, the trustee sale date was extended, and ultimately Chase did not give plaintiff a loan modification. (See Compl. ¶¶ 27-40.)

In early January of 2011, Chase told plaintiff that the sale date was scheduled for January 27, 2011, and requested that plaintiff send another "Hardship letter and additional proof of income." (Id. ¶ 40.) The Complaint alleges that "[d]espite Plaintiff's requests for additional time for Defendant to act in good faith and review the documentation requested and submitted, Defendants have outright refused to postpone the sale date, forcing Plaintiff into filing the instant complaint." (Id. ¶ 41.)

The Complaint asserts nine claims against all defendants: (1) declaratory judgment that the "Contract is void on the ground that the contract is contrary to public policy and is unconscionable" and declaratory judgment related to loan modification, (2) breach of the implied covenant of good faith and fair dealing, (3) fraud, (4) intentional misrepresentation of fact, (5) "Unfair and Deceptive Business Act Practices (UDAP)," (6) "unconscionability," (7) "Predatory Lending; California Business and Professions Code § 17200," (8) violation of California Civil Code section 2923.6, and (9) violation of California Civil Code section 2923.5.

On February 16, 2011, Chase and FHLMC removed this action to federal court.[1] Defendants have subsequently provided

[1] The court has jurisdiction pursuant to 12 U.S.C. § 1452(f) (deeming FHLMC a federal agency and actions involving FHLMC as arising under federal law and providing that FHLMC may

a quitclaim deed purportedly signed by plaintiff conveying her interest to a third party sharing plaintiff's last name, which was recorded on March 21, 2011, following the filing of the instant motion.[2] (Reply to Non-Opp'n to Mot. to Dismiss Pursuant to Rule 12(b)(6) Ex. A (Docket No. 7).)

Plaintiff did not file an opposition or statement of non-opposition to the moving defendants' motion to dismiss. Nor did counsel for plaintiff bother to appear at the hearing on the motion.

II. Discussion

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009), and where a complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to

---

remove action from state court according to removal procedures) and 28 U.S.C. § 1442(a)(1) (governing removal of actions against federal agencies) because FHLMC is a party. See generally Huntingdon Valley Club Cond. Ass'n v. Penn. Housing Fin. Agency, No. Civ.A.04-4770, 2005 WL 44524, at *3 (E.D. Pa. Jan. 10, 2005) (discussing relationship between § 1452(f) and § 1442(a)(1)).

[2] The moving defendants urge the court to dismiss all claims against them in light of the recently recorded quitclaim deed. (See Reply to Non-Opp'n to Mot. to Dismiss Pursuant to Rule 12(b)(6) at 2:22-2:6 (Docket No. 7).) The court declines to do so for the following two reasons. First, some of plaintiff's claims do not require a property interest. Second, based on the factual allegations in the Complaint, plaintiff plausibly has a property interest.

relief.'" Id. (quoting Twombly, 550 U.S. at 557). In deciding whether a plaintiff has stated a claim, the court must assume that the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation mark omitted).

In general, a court may not consider items outside the pleadings upon deciding a motion to dismiss, but may consider items of which it can take judicial notice. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The moving defendants request that the court judicially notice the applicable recorded documents. (See Defs.' Req. for Judicial Notice Exs. A-D; Reply to Non-Opp'n to Mot. to Dismiss Pursuant to Rule 12(b)(6) Ex. A.) The court will take judicial notice of these documents, since they are matters of public record whose accuracy cannot be questioned. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). The court will also judicially notice the P & A agreement between the FDIC and

Chase.[3] See Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866 n.1 (9th Cir. 2004) (taking judicial notice of agreements to which the government was a party).

A. Breach of the Implied Covenant of Good Faith and Fair Dealing[4]

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Marsu, B.V. v. Walt Disney Co., 185 F.3d 932, 937 (9th Cir. 1999)

---

[3] The court notes that a number of district courts have held that the FDIC retained liability for Washington Mutual's lending claims pursuant to the P & A agreement. See, e.g., Biggins v. Wells Fargo & Co., No. Civ. 09-01272, 2009 WL 2246199, at *12 (N.D. Cal. July 27, 2009); Grealish v. Wash. Mut. Bank FA, No. Civ. 08-763-TS, 2009 WL 2170044, at *1 (D. Utah July 20, 2009); Cassese v. Wash. Mut., Inc., No. Civ. 05-2724, 2008 WL 7022845, at *3 (E.D.N.Y. Dec. 22, 2008). However, as this court has previously held in an unrelated case against Chase, Chase is liable for servicing claims against Washington Mutual. See Wilson v. JPMorgan Chase Bank, NA., No. CIV. 2:09-863 WBS GGH, 2010 WL 2574032, at *3 (E.D. Cal. June 25, 2010). Here, the P & A agreement does not require dismissal of all claims because plaintiff has alleged wrongful conduct by the moving defendants following execution of the P & A agreement. To the extent the Complaint attempts to hold the moving defendants liable for Washington Mutual's conduct, the court need not decide whether the P & A agreement bars liability because the claims related to Washington Mutual are deficient on the face of the Complaint.

[4] With respect to choice of law, the moving defendants have not argued that any of plaintiff's claims are preempted by federal law. In particular, the moving defendants have not raised the issue of whether claims against FHLMC are governed by federal common law and, if so, whether federal common law differs from California law. See generally Rose v. Fed. Home Loan Mortg. Corp., No. 1:09-cv-170, 2010 WL 2640460, at *6 (W.D. Mich. June 30, 2010) (recognizing that some lower courts have interpreted § 1452(f) as directing courts to apply federal common law to claims against FHLMC, but ultimately applying state law). Moreover, the moving defendants have not argued that any claims are preempted by the Home Owners' Loan Act ("HOLA"). See 12 U.S.C. § 1464 (granting broad authority to Office of Thrift Supervision to issue regulations governing thrifts); 12 C.F.R § 560.2 (preemption regulation); Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1005 (9th Cir. 2008). Accordingly, the court applies California law.

(applying California law) (internal quotation marks omitted). That duty, known as the covenant of good faith and fair dealing, requires "that neither party . . . do anything which will injure the right of the other to receive the benefits of the agreement." Andrews v. Mobile Aire Estates, 125 Cal. App. 4th 578, 589 (2d Dist. 2005) (internal quotation marks omitted). "[T]he implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract." Racine & Laramie, Ltd. v. Dep't of Parks & Recreation, 11 Cal. App. 4th 1026, 1032 (4th Dist. 1992). "[T]he implied covenant is a supplement to an existing contract, and thus it does not require parties to negotiate in good faith prior to any agreement." McClain v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 799 (2d Dist. 2008).

Here, plaintiff rests this claim on the loan origination and attempts at loan modification. (See Compl. ¶ 50.) However, defendants did not have a duty of good faith and fair dealing during the loan origination. See Lopez v. Wachovia Mortg., 2010 WL 2836823, No. C 10-01645, at *8 (N.D. Cal. July 19, 2010) ("Thus, to the extent that the complaint's allegations stem from the formation and negotiation of the loan, plaintiff's claim for breach of the covenant must be dismissed."); Madrid v. J.P. Morgan Chase Bank, N.A., No. 09-cv-00731 JAM GGH, 2009 WL 3255880, at *4 (E.D. Cal. Oct. 8, 2009). Similarly, because plaintiff has not alleged facts plausibly suggesting that plaintiff and defendants agreed to modify the loan, this claim must fail as it relates to loan modification. See Prasad v. BAC Home Loans Servicing LP, CIV No. 2:10-CV-2343 FCD KJN, 2010 WL

5090331, at *4 (E.D. Cal. Dec. 7, 2010) (granting motion to dismiss when agreement to modify was not sufficiently alleged).

B. Fraud and Intentional Misrepresentation of Fact

In California, the essential elements of a claim for fraud are "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." In re Estate of Young, 160 Cal. App. 4th 62, 79 (4th Dist. 2008) (internal quotation marks omitted).

Under the heightened pleading requirements for claims of fraud under Rule 9(b), "a party must state with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). A plaintiff must include "the who, what, when, where, and how" of the fraud. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)) (internal quotation marks omitted).

Plaintiff's two fraud claims relate to the loan origination and appear to be based on the allegations that Washington Mutual represented to plaintiff that she could afford the loan, that the real property was "sufficient in value to support th[e] transaction," and that the loan was "a good product for the Plaintiff." (Compl. ¶ 61.) While plaintiff has pled what was misrepresented to her, the Complaint lacks facts supporting the other elements of fraud and fails to include the who, what, when, where, and how of the fraud. Vess, 317 F.3d at 1106. Accordingly, the court will dismiss these claims.

C. California's Unfair Competition Law

While labeled as a claim for "Unfair and Deceptive Business Act Practices (UDAP)," the Complaint rests the fifth claim on a violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210. (See Compl. ¶ 70.) The seventh claim also alleges a violation of the UCL.

The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). "A plaintiff must state with reasonable particularity the facts supporting the statutory elements of the violation." Khoury v. Maly's of Cal., Inc., 14 Cal. App. 4th 612, 619 (2d Dist. 1993).

"By proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." Cal-Tech Commc'ns, Inc., 20 Cal. 4th at 180 (internal quotation marks omitted). "Fraudulent" as used in the UCL "does not refer to the common law tort of fraud" but only requires a showing that members of the public "are likely to be deceived." Puentes v. Wells Fargo Home Mortg., Inc., 160 Cal. App. 4th 638, 645 (4th Dist. 2008) (internal quotation marks omitted). A business practice is "unfair" when it "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1473 (2d Dist. 2006).

Plaintiff's fifth claim incorporates the prior allegations and alleges that defendants "failed to undergo a diligent underwriting process for this loan," "failed to properly

adjust and disclose facts and circumstances relating to Plaintiff's Adjustable-Rate Mortgage," and "placed Plaintiff in a loan, by way of stated income and misleading facts, which they [sic] never should have been approved for because she could not afford it." (Compl. ¶ 69.)

Plaintiff alleges that the loan marketing "fail[ed] to fully disclose all material terms and [the loan] includes terms and provisions which are unfair, fraudulent, or unconscionable." (Id. ¶ 79.) The marketing was allegedly based on "fraud, exaggeration, misrepresentation or the concealment of a material fact and [the loan] was underwritten without due diligence by the party originating the loan." (Id. ¶ 80.) Plaintiff also alleges that the loan does "not plainly and prominently disclose on the good faith estimate of closing costs the size of the yield spread premium" and "contains loan terms whereby the borrower can never realistically repay the loan." (Id. ¶ 81-82.)

To the extent the UCL claims are premised on the unlawful prong, plaintiff has not identified the predicate federal or state law. Moreover, plaintiff's allegations are conclusory and lacking in reasonable particularity. Khoury, 14 Cal. App. 4th at 619. The factual allegations do not plausibly suggest that defendants engaged in a business practice that was unfair or fraudulent. Thus, the court will dismiss these claims.

D. Unconscionability[5]

The Complaint's citation to "UCC-2-3202" appears to

---

[5] While unconscionability is a defense, not an affirmative claim, this claim requires analysis because plaintiff seeks declaratory judgment related to unconscionability.

invoke California Civil Code section 1670.5, which codifies Uniform Commercial Code section 2-302. California Civil Code section 1670.5 provides that a court may not enforce a contract, or provision therein, that it finds unconscionable. A contract is unenforceable only if it is both procedurally and substantively unconscionable. Shroyer v. New Cingular Wireless Servs., Inc., 498 F.3d 976, 981 (9th Cir. 2007). A contract is procedurally unconscionable when there is oppression or surprise due to unequal bargaining power. Discover Bank v. Super. Ct., 36 Cal. 4th 148, 160 (2005). A contract will be considered substantively oppressive where the results are overly harsh or one-sided. Id. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Shroyer, 498 F.3d at 981 (quoting Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1280 (9th Cir. 2006) (internal quotation marks omitted).

Plaintiff's claim incorporates the prior allegations and concludes:

> Here, based on the deception, unfair bargaining position, lack of adherence to the regulations, civil codes and federal standards that the Defendants were required to follow; coupled with the windfall that the Defendants reaped financially from their predatory practices upon Trustor, the court may find that the loan agreement and trust deed are unconscionable and of no force or effect.

(Compl. ¶ 76.)

Consideration of whether a contract is unconscionable is sometimes premature at the motion to dismiss stage. See Cazares v. Pac. Shore Funding, No. 04-2548, 2006 WL 149106, at *6 n.4 (C.D. Cal. Jan. 3, 2006) ("A determination of whether a

contract is unconscionable requires a consideration of facts that are beyond the scope of a motion to dismiss. For this reason alone, [defendants] cannot obtain a dismissal.”). Here, however, plaintiff has not offered any facts about the terms of the loan or the circumstances surrounding its consummation and thus the court will grant the moving defendants' motion to dismiss this claim.[6]

E. Violation of California Civil Code Section 2923.6

Section 2923.6 indicates nothing more than the California legislature's intent that a mortgagee or beneficiary “offer the borrower a loan modification or workout plan if such modification or plan is consistent with its contractual or other authority.” Cal. Civ. Code § 2923.6(b). Accordingly, “nothing in Cal. Civ. Code § 2923.6 imposes a duty on servicers of loans to modify the terms of loans or creates a private right of action for borrowers.” Farner v. Countrywide Home Loans, No. 08cv2193, 2009 WL 189025, at *2 (S.D. Cal. Jan. 26, 2009). Accordingly, the court will dismiss this claim.

F. Violation of California Civil Code Section 2923.5

“A mortgagee, beneficiary, or authorized agent [must] contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.” Cal. Civ. Code. § 2923.5(a)(2). Failure to comply with this subsection is excused if the borrower

---

[6] Plaintiff's claim for declaratory judgment is derivative of the claims for unconscionability and breach of the covenant of good faith and fair dealing. Because the court will dismiss these other claims, the court will dismiss the claim for declaratory judgment.

could not be reached despite "due diligence," as defined in the statute. Id. § 2923.5(g). A mortgagee or beneficiary has satisfied the due diligence requirement if it was not able to contact the borrower after (1) mailing a letter containing certain information; (2) then calling the borrower "by telephone at least three times at different hours and on different days"; (3) mailing a certified letter, with return receipt requested, if the borrower does not call back within two weeks; (4) providing a telephone number to a live representative during business hours; and (5) posting a link on the homepage of its Internet Web site with certain information. Id.

A notice of default may be filed only thirty days after the initial contact with the borrower or satisfying the due diligence requirements. Id. § 2923.5(a)(1). A notice of default must be accompanied by a declaration stating that the buyer has been contacted or could not be reached despite due diligence. Id. § 2923.5(b). The only remedy for violation of this statute is postponement of a foreclosure sale until there has been compliance with the statute. Paik v. Wells Fargo Bank, N.A., No. C 10-04016, 2011 WL 109482, at *3 (N.D. Cal. Jan. 13, 2011); Mabry v. Super. Ct., 185 Cal. App. 4th 208, 223 (4th Dist. 2010) ("If section 2923.5 is not complied with, then there is no valid notice of default, and without a valid notice of default, a foreclosure sale cannot proceed. The available, existing remedy is . . . to postpone the sale until there has been compliance with section 2923.5.").

Plaintiff alleges that all defendants failed "to assess the financial situation and explore options for plaintiff to

avoid foreclosure, thirty (30) days prior to filing the Default." (Compl. ¶ 96.) Plaintiff allegedly received "no phone calls, phone messages, or letters via first class or certified mail either before or after the Notice of Default was recorded." (Id. ¶ 100.)

While the moving defendants' provided the Notice of Default in which Quality Loan declares that it complied with the statute, the Complaint's allegations to the contrary are sufficient to defeat a motion to dismiss. See Caravantes v. Cal. Reconveyance Co., No. 10-CV-1407, 2010 WL 4055560, at *8 (S.D. Cal. Oct. 14, 2010). Accordingly, the court will deny the motion to dismiss this claim.

IT IS THEREFORE ORDERED that J.P. Morgan Chase and Federal Home Loan Mortgage Corporation's motion to dismiss be, and the same hereby is, DENIED with respect to plaintiff's claim for violation of California Civil Code section 2923.5 and GRANTED in all other respects.

If plaintiff wishes to amend the Complaint to cure the defects in the other eight causes of action, she may do so within twenty days from the date of this Order.

DATED: April 11, 2011

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE