UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CECILIA ARGUETA, an individual,

       Plaintiff,

  v.

J.P. MORGAN CHASE, dba WASHINGTON MUTUAL F.S.B., QUALITY LOAN SERVICE CORPORATION, FEDERAL HOME LOAN MORTGAGE CORPORATION, and DOES 1-20,

       Defendants.
_____/

NO. CIV. 2:11-441 WBS GGH

MEMORANDUM AND ORDER RE: MOTION TO DISMISS

----oo0oo----

       Plaintiff Cecilia Argueta brought this action against defendants J.P. Morgan Chase ("Chase") d/b/a Washington Mutual F.S.B. ("Washington Mutual" or "WAMU"), Quality Loan Service Corporation, and Federal Home Loan Mortgage Corporation ("FHLMC" or "Freddie Mac"), arising from defendants' allegedly wrongful conduct related to a residential loan modification application and a Notice of Default and Election to Sell Under Deed of Trust. Chase and FHLMC have filed a joint motion to dismiss the First

1

Amended Complaint ("FAC"), (Docket No. 12), in its entirety for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 13.)

## I.   Factual and Procedural Background

In January of 2007, plaintiff refinanced an existing loan and signed a promissory note with Washington Mutual for a $320,000.00 loan, which was secured by a deed of trust for plaintiff's primary residence. (FAC ¶¶ 1, 4, 12, 14; Req. for Judicial Notice in Supp. of Defs.' Mot. to Dismiss ("Defs.' Req. for Judicial Notice") Ex. A (recorded deed of trust) (Docket No. 13-2).)

The FAC alleges that "[t]he promissory note and the deed of trust was subsequently transferred to Freddie Mac, although WaMu, now Chase, retained servicing rights." (FAC ¶ 13.)

A Notice of Default and Election to Sell Under Deed of Trust reflecting a default in the amount of $8,007.99 was recorded on April 24, 2009, in the Recorder's Office of San Joaquin County. (Defs.' Req. For Judicial Notice Ex. B.) On August 26, 2010, a Notice of Trustee Sale was recorded. (Id. Ex. D.) The FAC details a series of interactions between plaintiff and Chase from September of 2010 to January of 2011 in which plaintiff applied for a loan modification, the trustee sale date was postponed, and ultimately Chase did not give plaintiff a loan modification. (See, e.g., FAC ¶¶ 15-55.)

On or about January 10, 2011, Chase wrote to plaintiff that "she was denied for the Home Affordable Modification Program

1  ("HAMP") because Chase was 'unable to verify that you live in the
2  Property as your primary residence.'" (Id. ¶ 49.)  The FAC
3  alleges that "[u]p to that point, Chase <u>never requested</u>
4  information from Plaintiff verifying that she lives in the
5  Property as her primary residence," which she does.  (Id. ¶¶ 49,
6  66.)

7       On January 19, 2011, Chase refused to discuss
8  plaintiff's account because the "account [was] in litigation."
9  (Id. ¶ 50.)  Approximately a day later, "Plaintiff received a
10 letter from Chase confirming that she was denied for a HAMP
11 modification, but also solicited Plaintiff to further contact
12 Chase for other 'workout' options." (Id. ¶ 51.)  The FAC alleges
13 that "[o]ther than a HAMP modification, Plaintiff was never
14 denied for any other modification review, such as an internal
15 review." (Id. ¶ 52.)

16      Plaintiff alleges that even if plaintiff qualified for
17 a modification under a program other than HAMP, "Chase has
18 refused to actually review Plaintiff [sic] such a program since
19 Chase has a policy to not review any borrower for any
20 modification program after that borrower has been denied for a
21 modification for any reason." (Id. ¶ 53.)  Plaintiff alleges
22 that, because of this policy, Chase has "refused to allow
23 Plaintiff to submit additional information to Chase in order to
24 confirm that the Property was Plaintiff's primary residence" and
25 has "refused to consider Plaintiff for any other modification
26 programs that Chase participates in, including an internal
27 modification program." (Id. ¶¶ 54-55.)

28      On January 26, 2011, plaintiff filed a complaint in

3

state court.  On February 16, 2011, Chase and FHLMC removed the action to this court.  (Docket No. 1.)  The court dismissed all but the claim for violation of California Civil Code section 2923.5 in plaintiff's original Complaint and afforded plaintiff leave to amend.  (Apr. 11, 2011, Order at 15:13-17 (Docket No. 11).)  Plaintiff's FAC abandons the stand-alone claim for violation of section 2923.5 and asserts claims for "Promissory Estoppel/Breach of Contract," breach of covenant of good faith and fair dealing, negligence, and violation of California's Unfair Competition Law[1] ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210.

II. <u>Discussion</u>

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," <u>Ashcroft v. Iqbal</u>, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).  In deciding whether a plaintiff has stated a claim, the court must accept the

---

[1] While plaintiff abandoned her stand-alone claim for violation of California Civil Code section 2923.5, she alleges a violation of that statute in support of her claim for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210.

4

allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).

In general, a court may not consider items outside the pleadings upon deciding a motion to dismiss, but may consider items of which it can take judicial notice. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Defendants request that the court judicially notice the applicable recorded documents. (See Defs.' Request for Judicial Notice Exs. A-D.) The court will take judicial notice of these documents, since they are matters of public record whose accuracy cannot be questioned. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

A.  "Promissory Estoppel/Breach of Contract"

The elements of a cause of action for breach of contract are (1) the existence of the contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages. First Commercial Mortg. Co. v. Reece, 89 Cal. App. 4th 731, 745 (2d Dist. 2001).

"The general rule is that if an 'essential element' of a promise is reserved for the future agreement of both parties,

5

the promise gives rise to no legal obligation until such future agreement is made." City of Los Angeles v. Super. Ct. of L.A. Cnty., 51 Cal. 2d 423, 433 (1959) (quoting Ablett v. Clauson, 43 Cal. 2d 280, 284 (1954)).  Based on this principle, a number of courts have dismissed claims based on "agreements to agree." See, e.g., Grant v. Aurora Loan Servs., Inc., 736 F. Supp. 2d 1257, 1266 (C.D. Cal. 2010).  However, some courts have held that "agreements to negotiate" are enforceable.  See, e.g., Copeland v. Baskin Robbins U.S.A., 96 Cal. App. 4th 1251, 1255-60 (2d Dist. 2002).

Here, plaintiff incorporates her prior allegations and alleges:

> [P]laintiff entered into an oral agreement with Chase that provided that Plaintiff would submit a modification application to Chase and provide Chase with requested documents and that Chase would review Plaintiff for a loan modification whereby if Plaintiff qualified for any modification program that Chase participated in, then Plaintiff would be offered a loan modification.
>
> At all times it was contemplated by the parties that regardless of whether Plaintiff qualified for a loan modification, that Chase would review Plaintiff for a modification and supply Plaintiff an answer as to her qualifications based on the merits of her financial situation.
>
> It was further contemplated at all times by the parties that Chase and/or Freddie Mac would not foreclose on Plaintiff's Property prior to Chase giving Plaintiff an answer as to whether she qualified for a loan modification.[2]

---

[2]  Plaintiff has not alleged that the parties agreed to modify the residential loan or that she is entitled to a modification under the terms of the promissory note or deed of trust.  Plaintiff has also not alleged a claim based on violation of a statutory right or third-party beneficiary status, claims which have been rejected by other courts considering the Home Affordable Modification Program.  See Cleveland v. Aurora Loan Servs., LLC, No. C 11-0773, 2011 WL 2020565, at *5 (N.D. Cal. May

6

1 (FAC ¶¶ 59-60.)

2        Plaintiff's allegations are deficient for two primary reasons.  First, plaintiff may be alleging an "agreement to agree" to a loan modification, which is not enforceable.  See City of Los Angeles, 51 Cal.2d at 433.  Second, even if the court construes plaintiff's FAC as alleging an "agreement to negotiate" a loan modification and concludes that such agreements are enforceable, plaintiff has only alleged in conclusory fashion that the parties entered into an oral agreement.  Plaintiff has not provided nonconclusory factual content from which the court can plausibly infer that the parties entered into an oral agreement.  See Twombly, 550 U.S. at 570.  While plaintiff has detailed a series of interactions with defendants involving plaintiff's loan modification application, (see FAC ¶¶ 14-56), such facts are only consistent with defendants' liability and do not give rise to plausible entitlement to relief.  See Iqbal, 129 S. Ct. at 1949.  Accordingly, the court will dismiss the breach of contract claim.[3]

        Under California law, a plaintiff alleging a promissory

---

24, 2011) ("Numerous district courts within the Ninth Circuit have ruled that there is no express or implied private right of action to sue lenders or loan servicers for violation of HAMP. In  addition, numerous courts have determined that individual borrowers do not have standing to sue under a HAMP [Servicer Participation Agreement] because they are not intended third-party beneficiaries of the SPA.") (citations omitted).

[3] "A mortgage or deed of trust comes within the statute of frauds." Secrest v. Sec. Nat'l Mortg. Loan Trust 2002-2, 167 Cal. App. 4th 544, 552 (4th Dist. 2008).  As "an agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds," a loan modification also requires a written agreement.  Id. at 553.  The court need not reach whether an "agreement to negotiate" a loan modification is also subject to the statute of frauds.

7

estoppel claim must show: (1) the existence of a promise "clear and unambiguous in its terms"; (2) "reliance by the party to whom the promise is made"; (3) that any reliance was both "reasonable and foreseeable"; and (4) that the party asserting the estoppel was injured by his reliance. US Ecology, Inc. v. State, 129 Cal. App. 4th 887, 901 (4th Dist. 2005) (quoting Laks v. Coast Fed. Sav. & Loan Ass'n, 60 Cal. App. 3d 885, 890 (2d Dist. 1976)).

Here, plaintiff's promissory estoppel claim relies on the insufficiently pled "above-referenced agreement," (FAC ¶ 70), and thus plaintiff has not sufficiently alleged the existence of a promise "clear and unambiguous in its terms." US Ecology, Inc., 129 Cal. App. 4th at 901 (quoting Laks, 60 Cal. App. 3d at 890). Thus, the court will dismiss the promissory estoppel claim.

B.   Breach of Covenant of Good Faith and Fair Dealing

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Marsu, B.V. v. Walt Disney Co., 185 F.3d 932, 937 (9th Cir. 1999) (quoting Carma Developers, Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 371 (1992)) (internal quotation marks omitted). That duty, known as the covenant of good faith and fair dealing, requires "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." Andrews v. Mobile Aire Estates, 125 Cal. App. 4th 578, 589 (2d Dist. 2005) (quoting Careau Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1393 (2d Dist. 1990)) (internal quotation mark omitted). "[T]he implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be

extended to create obligations not contemplated in the contract." Racine & Laramie, Ltd. v. Dep't of Parks & Recreation, 11 Cal. App. 4th 1026, 1032 (4th Dist. 1992). "[T]he implied covenant is a supplement to an existing contract, and thus it does not require parties to negotiate in good faith prior to any agreement." McClain v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 799 (2d Dist. 2008).

Here, plaintiff's breach of covenant of good faith and fair dealing claim is supported by allegations nearly identical to the allegations that support her breach of contract claim. (Compare FAC ¶¶ 75-91, with id. ¶¶ 57-74.) Because plaintiff has not sufficiently alleged the existence of a contract, the court will dismiss this claim.

C.  Negligence

To state a claim for negligence, a plaintiff must show "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." Mendoza v. City of L.A., 66 Cal. App. 4th 1333, 1339 (2d Dist. 1998). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." Vasquez v. Residential Invs., Inc., 118 Cal. App. 4th 269, 278 (4th Dist. 2004).

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (3d Dist. 1991). This general rule also applies to loan servicers. See

9

Abels v. Bank of Am., No. C 11-0208, 2011 WL 1362074, at *3 (N.D. Cal. Apr. 11, 2011).

This no-duty rule does not apply "when the lender's activities exceed those of a conventional lender." Osei v. Countrywide Home Loans, 692 F. Supp. 2d 1240, 1249 (E.D. Cal. 2010); see Wagner v. Benson, 101 Cal. App. 3d 27, 35 (4th Dist. 1980) ("Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" (quoting Connor v. Great W. Sav. & Loan Ass'n, 69 Cal. 2d 850, 864 (1968))).

Even when the lender is acting within the scope of a conventional lender, the no-duty rule is only a general rule. Osei, 692 F. Supp. 2d at 1249. To determine whether a duty actually existed on the facts of the case, the Nymark court applied the six-factor test established by the California Supreme Court in Biakanja v. Irving, 49 Cal. 2d 647, 650 (1958). The Biakanja test balances six non-exhaustive factors:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1197 (9th Cir. 2001) (quoting Biakanja, 49 Cal. 2d at 650) (alterations in original) (internal quotation mark omitted). Although Biankaja applied the test to determine whether a defendant could be held liable to a third person not in privity with the defendant, Nymark held that the test also determined "whether a financial institution owes a duty of care to a borrower-client." Nymark, 231 Cal. App. 3d at

10

1098.

Here, plaintiff's negligence claim incorporates the FAC's prior allegations and additionally alleges:

> By accepting Plaintiff's modification application, requesting additional documents and conditions of Plaintiff, and representing that it was endeavoring to actually review Plaintiff for a modification, Chase had an obligation to Plaintiff to do so reasonably and conform to a standards of conduct for the protection of Plaintiff against unreasonable risks associated with reviewing Plaintiffs for a modification.

(FAC ¶ 93.) Chase allegedly acted unreasonably (1) "by failing to actually review Plaintiff for a modification and provide a timely answer to whether or not she qualifies for a modification based on the merits of her financials"; (2) "tak[ing] five months to review Plaintiff for a loan modification when her income is stable, and when she provided all the requested documentation to Chase"; (3) "deny[ing] Plaintiff for a modification in or about January 2011 on account of Plaintiff's failure to provide proof that the Property was her primary residence, when it was never requested of Plaintiff to provide such documentation"; and (4) "refus[ing] to accept any further documentation from Plaintiff to prove that the Property was her primary residence." (Id. ¶¶ 94, 102-104.)

Plaintiff's allegations about the loan modification application process are insufficient to plausibly suggest that defendants owed plaintiff a duty of care. See Dooms v. Fed. Home Loan Mortg. Corp., No. CV F 11-0352 LJO DLB, 2011 WL 1232989, at *12 (E.D. Cal. Mar. 31, 2011); Becker v. Wells Fargo Bank, N.A., Inc., No. 2:10-cv-02799 LKK KJN PS, 2011 WL 1103439, at *23 (E.D. Cal. Mar. 22, 2011) (magistrate judge's findings and

11

recommendations) (holding that allegations about loan modification application process did not give rise to duty); DeLeon v. Wells Fargo Bank, N.A., No. 10-CV-01390, 2010 WL 4285006, at *4 (N.D. Cal. Oct. 22, 2010) (finding that defendant did not have a duty "to complete the loan modification process"); Sullivan v. JP Morgan Chase Bank, NA, 725 F. Supp. 2d 1087, 1094 (E.D. Cal. 2010) (Burrell, J.) (holding that "Plaintiffs' allegations that Defendant misrepresented to them that a permanent loan modification would be put into place are insufficient to form the basis of a negligence claim"). But see Ansanelli v. JP Morgan Chase Bank, N.A., No. C 10-03892, 2011 WL 1134451, at *7 (N.D. Cal. Mar. 28, 2011); Garcia v. Ocwen Loan Servicing, LLC, No. C 10-0290, 2010 WL 1881098, at *3 (N.D. Cal. May 10, 2010) (magistrate judge's order) (holding that plaintiff's allegations about loan modification application process were sufficiently pled under Biakanja factors). Accordingly, the court will dismiss the negligence claim.

D. Violation of UCL

The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; see also Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). "A plaintiff must state with reasonable particularity the facts supporting the statutory elements of the violation." Khoury v. Maly's of Cal., Inc., 14 Cal. App. 4th 612, 619 (2d Dist. 1993).

"By proscribing 'any unlawful' business practice, 'section 17200 borrows violations of other laws and treats them as unlawful practices' that the unfair competition law makes

12

independently actionable." Cal-Tech Commc'ns, Inc., 20 Cal. 4th at 180 (quoting State Farm Fire & Casualty Co. v. Super. Ct., 45 Cal. App. 4th 1093, 1103 (2d Dist. 1996)). "Fraudulent" as used in the UCL "does not refer to the common law tort of fraud" but only requires a showing that members of the public "are likely to be deceived." Puentes v. Wells Fargo Home Mortg., Inc., 160 Cal. App. 4th 638, 645 (4th Dist. 2008) (quoting Saunders v. Super. Ct., 27 Cal. App. 4th 832, 839 (2d Dist. 1994)) (internal quotation marks omitted). A business practice is "unfair" when it "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1473 (2d Dist. 2006).

Here, plaintiff's fourth claim alleges that Chase's previously-discussed conduct during the loan modification application process was unfair, unlawful, or fraudulent under the UCL. (FAC ¶¶ 108-123.) Plaintiff's fifth claim is a UCL claim based on violation of California Civil Code section 2923.5, which governs the procedures for filing a Notice of Default. (Id. ¶ 133.)

Even if plaintiff has sufficiently alleged a violation of the UCL, standing to bring a UCL claim requires "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added). To have standing, a plaintiff must sufficiently allege that (1) he has "lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution," Rubio v. Capital One Bank, 613 F.3d 1195,

1203-04 (9th Cir. 2010), and (2) there is a "causal connection" between the defendant's alleged UCL violation and the plaintiff's injury in fact. Id. at 1204 (quoting Hall v. Time Inc., 158 Cal. App. 4th 847, 855 (4th Dist. 2008)).

Here, with respect to injury and causation, plaintiff's UCL claims allege:

> By reason of the foregoing, Plaintiff has suffered and continues to suffer harm.
>
> Plaintiff has incurred continuing and additional expenses associated with Chase failing to actually review Plaintiff for a loan modification. On account of Chase's failure, Plaintiff is falling further behind on her monthly mortgage payments, in addition to having spent considerable amount of time and energy complying with Chase's requests for supplemental documentation. As a result, she stands to lose her Property, which is her primary residence.
> . . .
> As a proximate result of the violations of Civil Code § 2923.5 by Defendants as set forth above, Plaintiff has suffered and will continue to suffer irreparable injury through the loss of the subject property.

(FAC ¶¶ 122-123, 132.)

Plaintiff's alleged injury is the possible loss of the property. However, plaintiff would still be faced with the possible loss of the property even if defendants had not engaged in the alleged conduct involving the loan modification application and failure to comply with California Civil Code section 2923.5. See DeLeon v. Wells Fargo Bank, N.A., No. 10-CV-01390, 2011 WL 311376, at *7 (N.D. Cal. Jan. 28, 2011) ("Without some factual basis suggesting that Plaintiffs could have cured the default in the fall of 2009, the Court cannot reasonably infer that Wells Fargo's alleged misrepresentations [that it would complete a loan modification agreement and that no foreclosure sale would occur while the loan modification was

14

1  pending] resulted in the loss of Plaintiffs' home.  Rather, the
2  facts alleged suggest that Plaintiffs lost their home because
3  they became unable to keep up with monthly payments and lacked
4  the financial resources to cure the default.  Although the Court
5  understands Plaintiffs' frustrations with Wells Fargo's seemingly
6  contradictory statements and actions, it does not appear that
7  this conduct resulted in a loss of money or property."); Justo v.
8  Indymac Bancorp, No. SACV 09-1116, 2010 WL 623715, at *4 (C.D.
9  Cal. Feb. 19, 2010) ("[P]laintiffs make no attempt to show a
10 causal connection between the alleged misrepresentation-the
11 promise to modify loans-and the alleged injury-the sale of their
12 homes.").  But see Zivanic v. Wash. Mut. Bank, F.A., No. 10-737,
13 2010 WL 2354199, at *5 (N.D. Cal. June 9, 2010).  Accordingly,
14 because plaintiff lacks standing under the UCL, the court will
15 dismiss the UCL claims.

16         IT IS THEREFORE ORDERED that J.P. Morgan Chase and
17 Federal Home Loan Mortgage Corporation's motion to dismiss the
18 First Amended Complaint in its entirety be, and the same hereby
19 is, GRANTED.

20         Plaintiff is granted twenty days from the date of this
21 Order to file a Second Amended Complaint, if she can do so
22 consistent with this Order.
23 DATED:  June 30, 2011

                              _____
                              WILLIAM B. SHUBB
                              UNITED STATES DISTRICT JUDGE