UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CECILIA ARGUETA, an individual,<br><br>            Plaintiff,<br><br>      v.<br><br>J.P. MORGAN CHASE, dba WASHINGTON MUTUAL F.S.B., QUALITY LOAN SERVICE CORPORATION, FEDERAL HOME LOAN MORTGAGE CORPORATION, and DOES 1-20,<br><br>            Defendants.<br>_____/ | NO. CIV. 2:11-441 WBS GGH<br><br><u>MEMORANDUM AND ORDER RE:<br>MOTION TO DISMISS</u> |

----oo0oo----

   Plaintiff Cecilia Argueta brought this action against defendants J.P. Morgan Chase ("Chase"), d/b/a Washington Mutual F.S.B. ("Washington Mutual" or "WAMU"), Quality Loan Service Corporation, and Federal Home Loan Mortgage Corporation ("FHLMC" or "Freddie Mac"), arising from defendants' allegedly wrongful conduct related to a residential loan modification application and a Notice of Default and Election to Sell Under Deed of Trust.

1

Chase and FHLMC have filed a joint motion to dismiss the Second Amended Complaint ("SAC"), (Docket No. 38), in its entirety for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docket No. 42.)

I.   Factual and Procedural Background

In January of 2007, plaintiff refinanced an existing loan and signed a promissory note with Washington Mutual for a $320,000.00 loan, which was secured by a deed of trust for plaintiff's primary residence.  (SAC ¶¶ 3, 4, 12, 14; Req. for Judicial Notice in Supp. of Defs.' Mot. to Dismiss ("Defs.' Req. for Judicial Notice") Ex. A (Docket No. 42-2).)

The SAC alleges that "[t]he promissory note and the deed of trust was subsequently transferred to Freddie Mac, although WaMu, now Chase, retained servicing rights."  (SAC ¶ 13.)

A Notice of Default and Election to Sell Under Deed of Trust reflecting a default in the amount of $8,007.99 was recorded on April 24, 2009, in the Recorder's Office of San Joaquin County.  (Defs.' Req. For Judicial Notice Ex. B.)  On August 26, 2010, a Notice of Trustee's Sale was recorded.  (Id. Ex. D.)  The SAC details a series of interactions between plaintiff and Chase from August of 2010 to January of 2011 in which plaintiff applied for a loan modification, the trustee sale date was postponed, and ultimately Chase did not give plaintiff a loan modification.  (See, e.g., SAC ¶¶ 15-55.)

On or about January 10, 2011, Chase wrote to plaintiff that "she was denied for the Home Affordable Modification Program

1  ("HAMP") because Chase was 'unable to verify that you live in the
2  Property as your primary residence.'" (Id. ¶ 49.)  The SAC
3  alleges that "[u]p to that point, Chase <u>never requested</u>
4  information from Plaintiff verifying that she lives in the
5  Property as her primary residence," which she does.  (Id. ¶¶ 49,
6  66.)

7          On January 19, 2011, Chase refused to discuss
8  plaintiff's account because the "account [was] in litigation."
9  (Id. ¶ 50.)  Approximately a day later, "Plaintiff received a
10 letter from Chase confirming that she was denied for a HAMP
11 modification, but also solicited Plaintiff to further contact
12 Chase for other 'workout' options."  (Id. ¶ 51.)  The SAC alleges
13 that "[o]ther than a HAMP modification, Plaintiff was never
14 denied for any other modification review, such as an internal
15 review."  (Id. ¶ 52.)

16         Plaintiff alleges that even if she qualified for a
17 modification under a program other than HAMP, "Chase has refused
18 to actually review Plaintiff [sic] such a program since Chase has
19 a policy to not review any borrower for any modification program
20 after that borrower has been denied for a modification for any
21 reason."  (Id. ¶ 53.)  Plaintiff further alleges that, because of
22 this policy, Chase has "refused to allow Plaintiff to submit
23 additional information to Chase in order to confirm that the
24 Property was Plaintiff's primary residence" and has "refused to
25 consider Plaintiff for any other modification programs that Chase
26 participates in, including an internal modification program."
27 (Id. ¶¶ 54-55.)

28         On January 26, 2011, plaintiff filed a complaint in

state court.  On February 16, 2011, Chase and FHLMC removed the action to this court.  (Docket No. 1.)  The court dismissed all but the claim for violation of California Civil Code section 2923.5 in plaintiff's original Complaint and afforded plaintiff leave to amend.  (Apr. 11, 2011, Order at 15:13-17 (Docket No. 11).)  Plaintiff then filed a First Amended Complaint that abandoned the stand-alone claim for violation of section 2923.5 and asserted claims for "Promissory Estoppel/Breach of Contract," breach of covenant of good faith and fair dealing, negligence, and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210.  (Docket No. 12.)  The court dismissed all of these claims, again affording plaintiff leave to amend.  (June 30, 2011, Order at 15:16-22 (Docket No. 24).)

The parties stipulated to extend the time for filing a SAC to Jule 28, 2011.  (Docket Nos. 28, 29.)  After failing to file an amended complaint within that time, plaintiff filed a motion requesting leave to amend her FAC to which defendants did not respond.  (Docket Nos. 31, 32.)  The court granted plaintiff's motion, and plaintiff filed a SAC that abandoned the claims for negligence and UCL violations and asserted new claims to quiet title and for negligent misrepresentation.  (Docket Nos. 35, 38.)

II.  Discussion

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more

4

than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).  In deciding whether a plaintiff has stated a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).

In general, a court may not consider items outside the pleadings upon deciding a motion to dismiss, but may consider items of which it can take judicial notice.  Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

Defendants request that the court judicially notice the applicable recorded documents. (See Defs.' Request for Judicial Notice Exs. A-D.)  The court will take judicial notice of these documents, since they are matters of public record whose accuracy cannot be questioned.  See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

    A.    "Promissory Estoppel/Breach of Contract"

The elements of a cause of action for breach of contract are (1) the existence of the contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages. First Commercial Mortg. Co. v. Reece, 89 Cal. App. 4th 731, 745 (2d Dist. 2001).

"The general rule is that if an 'essential element' of a promise is reserved for the future agreement of both parties, the promise gives rise to no legal obligation until such future agreement is made." City of Los Angeles v. Super. Ct. of L.A. Cnty., 51 Cal. 2d 423, 433 (1959) (quoting Ablett v. Clauson, 43 Cal. 2d 280, 284 (1954)). Based on this principle, a number of courts have dismissed claims based on "agreements to agree." See, e.g., Grant v. Aurora Loan Servs., Inc., 736 F. Supp. 2d 1257, 1266 (C.D. Cal. 2010). However, some courts have held that "agreements to negotiate" are enforceable. See, e.g., Copeland v. Baskin Robbins U.S.A., 96 Cal. App. 4th 1251, 1255-60 (2d Dist. 2002).

Here, plaintiff reasserts the breach of contract claim that the court found inadequate in its June 30, 2011, Order without correcting any of the deficiencies that the court identified. Compare FAC ¶¶ 59-60 with SAC ¶¶ 59-61.[1]

---

[1] Defendants again misconstrue plaintiff's allegations. Plaintiff has still not alleged that the parties agreed to modify the residential loan or that she is entitled to a modification under the terms of the promissory note or deed of trust. Plaintiff has also not alleged a claim based on violation of a statutory right or third-party beneficiary status, claims which have been rejected by other courts considering the Home Affordable Modification Program. See Cleveland v. Aurora Loan Servs., LLC, No. C 11-0773, 2011 WL 2020565, at *5 (N.D. Cal. May 24, 2011) ("Numerous district courts within the Ninth Circuit have ruled that there is no express or implied private right of

Plaintiff's allegations are still deficient for two primary reasons.  First, plaintiff may be alleging an unenforceable "agreement to agree" to a loan modification.  See City of Los Angeles, 51 Cal.2d at 433.  Second, even if the court construes plaintiff's SAC as alleging an "agreement to negotiate" a loan modification and holds that such agreements are enforceable, plaintiff has only alleged in conclusory fashion that the parties entered into such an oral agreement.  Plaintiff has not provided nonconclusory factual content from which the court can plausibly infer that the parties entered into an oral agreement.  See Twombly, 550 U.S. at 570.  As the court pointed out in its earlier Order, while plaintiff has detailed a series of interactions with defendants involving plaintiff's loan modification application, (see SAC ¶¶ 14-56), "such facts are only consistent with defendants' liability and do not give rise to plausible entitlement to relief."  (June 30, 2011, Order at 7 (citing Iqbal, 129 S. Ct. at 1949).)  The court will therefore dismiss plaintiff's breach of contract claim.[2]

Under California law, a plaintiff alleging a promissory estoppel claim must show: (1) the existence of a promise "clear

---

action to sue lenders or loan servicers for violation of HAMP. In  addition, numerous courts have determined that individual borrowers do not have standing to sue under a HAMP [Servicer Participation Agreement] because they are not intended third-party beneficiaries of the SPA.") (citations omitted).

[2]  "A mortgage or deed of trust comes within the statute of frauds." Secrest v. Sec. Nat'l Mortg. Loan Trust 2002-2, 167 Cal. App. 4th 544, 552 (4th Dist. 2008).  As "an agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds," a loan modification also requires a written agreement.  Id. at 553.  The court need not reach whether an "agreement to negotiate" a loan modification is also subject to the statute of frauds.

7

and unambiguous in its terms"; (2) "reliance by the party to whom the promise is made"; (3) that any reliance was both "reasonable and foreseeable"; and (4) that the party asserting the estoppel was injured by his reliance. US Ecology, Inc. v. State, 129 Cal. App. 4th 887, 901 (4th Dist. 2005) (quoting Laks v. Coast Fed. Sav. & Loan Ass'n, 60 Cal. App. 3d 885, 890 (2d Dist. 1976)).

As plaintiff's promissory estoppel claim relies on the insufficiently pled "above-referenced agreement," (SAC ¶ 70), plaintiff has not sufficiently alleged the existence of a promise "clear and unambiguous in its terms." US Ecology, 129 Cal. App. 4th at 901 (quoting Laks, 60 Cal. App. 3d at 890). Accordingly, the court will dismiss the promissory estoppel claim.

  B.  Breach of Covenant of Good Faith and Fair Dealing

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Marsu, B.V. v. Walt Disney Co., 185 F.3d 932, 937 (9th Cir. 1999) (quoting Carma Developers, Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 371 (1992)) (internal quotation marks omitted). That duty, known as the covenant of good faith and fair dealing, requires "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." Andrews v. Mobile Aire Estates, 125 Cal. App. 4th 578, 589 (2d Dist. 2005) (quoting Careau Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1393 (2d Dist. 1990)) (internal quotation mark omitted). "[T]he implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract." Racine & Laramie, Ltd. v. Dep't of Parks & Recreation, 11 Cal.

App. 4th 1026, 1032 (4th Dist. 1992).  "[T]he implied covenant is a supplement to an existing contract, and thus it does not require parties to negotiate in good faith prior to any agreement."  McClain v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 799 (2d Dist. 2008).

Here, plaintiff's breach of covenant of good faith and fair dealing claim rests upon allegations that are all but identical to the allegations on which she bases her breach of contract claim.  (Compare SAC ¶¶ 75-91, with id. ¶¶ 57-74.)  As these allegation are insufficient to show that a contract existed between the parties, the court will dismiss this claim.

    C.    Negligent Misrepresentation

The elements of negligent misrepresentation under California law are: "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage."  Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 243 (2d Dist. 2007).[3]  Plaintiffs must suffer actual monetary loss to recover on a negligent misrepresentation claim.  Alliance Mortg. Co. v. Rothwell, 10 Cal. 4th 1226, 1240 (1995).  While the Ninth Circuit has not expressly held that negligent misrepresentation must be pled with particularity, it has

---

[3] Defendants spend a good deal of time explaining why plaintiff cannot bring a negligence claim against them.  As plaintiff has abandoned the negligence claim from her FAC and now brings a negligent misrepresentation claim, the court will not address defendants' arguments regarding a negligence claim.

9

recognized that "[u]nder California law, negligent misrepresentation is a species of actual fraud," Lorenz v. Sauer, 807 F.2d 1509, 1511-12 (9th Cir. 1987), and has held that the heightened standards of Rule 9(b) applies to claims that "sound in fraud" or are "grounded in fraud," Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). See also Neilson v. Union Bank of Cal, N.A., 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements.").

Plaintiff alleges that defendants engaged in negligent misrepresentation when they informed her that her loan modification application was complete, that there were no missing documents, and that her file was being reviewed. According to plaintiff, she was subsequently denied a loan modification on the grounds that Chase was "unable to verify that [she lives] in the Property as [her] primary residence," (SAC ¶ 94), when, in fact, "[a]t all relevant times, the Property has been Plaintiff's primary residence." (Id. ¶ 14.) She concludes from these facts that, contrary to defendants' representations, either her application was not actually under review or her application was not actually complete.

As an initial matter, the court notes that nowhere in the SAC does plaintiff allege that defendants lacked reasonable grounds for believing in the truth of the alleged misrepresentations, as required to state a claim for negligent misrepresentation. See Fox v. Pollack, 181 Cal. App. 3d 954, 962-63 (1st Dist. 1986) (claim for negligent misrepresentation

10

must include allegations that a misrepresentation was made without reasonable grounds for believing it to be true).

More troubling to plaintiff's claim, however, is the issue of damages. As plaintiff points out in her Opposition, she does not claim that she was entitled to a loan modification or that defendants agreed to modify her loan. (Pl.'s Opp'n to Mot. to Dismiss at 7 (Docket No. 45).) Accordingly, she cannot point to the fact that she was not ultimately granted a loan modification to show that she suffered damages. Instead, plaintiff claims that defendants' misrepresentations caused her damage because she "continued to expend time and effort to comply with Chase's requests for documentation" and has become "further and further in arrears and [has accrued] interest and fees that would not be accruing otherwise if Chase would have simply told her whether she qualifies for a loan modification." (SAC ¶ 97.)

Although plaintiff may have found it inconvenient to collect and submit the documents necessary to pursue her loan modification application, inconvenience is not economic damage. Nor is it clear how defendants' representations regarding the status of her loan modification application caused plaintiff to fall further behind on her mortgage as plaintiff does not allege that defendants told her that she had to stop making mortgage payments while her application was under review. It would seem likely that plaintiff fell further behind on her mortgage for the same reason she likely went into default and sought a loan modification--because she was unable to afford such payments. See DeLeon v. Wells Fargo Bank, N.A., No. 10-CV-1390, 2011 WL 311376, at *7, *9 (N.D. Cal. Jan. 28, 2011) (dismissing negligent

11

misrepresentation claim in part because bank's alleged misrepresentations regarding postponement of a foreclosure sale were not alleged to have caused damage where plaintiffs did not allege that they could have cured the default on their loan or explain how they would have otherwise halted the sale). Finally, plaintiff has alleged no facts to support her claim that defendants' alleged misrepresentations caused her to incur additional fees. Accordingly, the court will dismiss plaintiff's claim for negligent misrepresentation.

       D.    <u>Quiet Title</u>

           The purpose of a quiet title action is to establish one's title against adverse claims to real property. California Code of Civil Procedure section 761.020 states that a claim to quiet title requires: (1) a verified complaint, (2) a description of the property, (3) the title for which a determination is sought, (4) the adverse claims to the title against which a determination is sought, (5) the date as of which the determination is sought, and (6) a prayer for the determination of the title. Cal. Civ. Proc. Code § 761.020.

           The tender rule applies to a quiet title action. <u>Kozhayev v. America's Wholesale Lender</u>, No. CIV S-09-2841, 2010 WL 3036001, at *5 (E.D. Cal. Aug. 2, 2010); <u>see also</u> <u>Shimpones v. Stickney</u>, 219 Cal. 637, 649 (1934). A "quiet title action is doomed in the absence of Plaintiffs' tender of the full amount owed." <u>Gjurovich v. California</u>, No. 1:10-cv-01871, 2010 WL 4321604, at *8 (E.D. Cal. Oct. 26, 2010). Here, plaintiff has not alleged tender or the ability to tender. Accordingly, the court will grant defendants' motion to dismiss the quiet title

claim.[4]

IT IS THEREFORE ORDERED that J.P. Morgan Chase and Federal Home Loan Mortgage Corporation's motion to dismiss the Second Amended Complaint in its entirety be, and the same hereby is, GRANTED.

If plaintiff wishes to amend the SAC to cure the defects in the five causes of action, she may do so within twenty days from the date of this Order.

DATED:   November 30, 2011

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[4] According to plaintiff, the court should not dismiss their quiet title action because defendants do not move to dismiss that claim. (Pl.'s Opp'n to Mot. to Dismiss at 10.) Although defendants could have been clearer as to which of plaintiff's claims they addressed in their motion to dismiss, the motion does ask the court to dismiss the complaint in its entirety, makes brief mention of the quiet title action, and highlights plaintiff's failure to allege tender. (Docket No. 42-1 at 4.)

13